**METRO NORTH STATE BANK; Federal Deposit Insurance Corporation, as Receiver for Metro North State Bank, and Boatmen's First National Bank of Kansas City, Appellees,**

v.

**E. Reed GASKIN; Jean Gaskin; Glen Vogelgesang, Appellants.**

No. 93–2850.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 16, 1994.

Decided Aug. 19, 1994.

Rehearing Denied Sept. 16, 1994.

Alvin Shapiro, Kansas City, MO, argued, for appellants.

Richard Martin, Kansas City, MO, argued, for appellees.

Before BOWMAN, HANSEN, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

BOWMAN, Circuit Judge.

E. Reed Gaskin, Jean Gaskin, and Glenn Vogelgesang appeal the District Court's[1] summary judgments in favor of Boatmen's First National Bank of Kansas City (Boatmen's) and the Federal Deposit Insurance Corporation (FDIC), successors in interest to Metro North State Bank (Metro North). We affirm.

## I.

This case involves limited unconditional loan guaranties made to Metro North by guarantors E. Reed Gaskin, Jean Gaskin, and Glenn Vogelgesang on seven million dollars in construction loans.[2] The loans were made to Rolling Hills Joint Venture, formed in 1986 to develop the Rolling Hills apartment project in Colorado. The Joint Venture partners were Plum Creek, a Colorado general partnership in which appellants were investors and partners; Western Capital Development Corporation; and Richard L. Danner, the general contractor for the Rolling Hills apartment project.

Metro North initiated this action on the loan guaranties in the Circuit Court of Clay County, Missouri[3], after the Rolling Hills Joint Venture defaulted on the construction loans. The Circuit Court granted summary judgments in favor of Metro North against the Gaskins and Vogelgesang in separate rulings concerning liability, the amount due and owing, and appellants' counterclaim.[4] Appellants timely appealed to the Missouri Court of Appeals. Subsequently, Metro North was declared insolvent and the FDIC was appointed as receiver. Metro North's assets, including the right to sue appellants on their loan guaranties, were transferred to the Missouri Bridge Bank. The FDIC and the Missouri Bridge Bank removed the still-pending appeal to the United States District Court for the Western District of Missouri. The District Court reentered the judgment of the Circuit Court of Clay County granting the summary judgments to the FDIC and the Missouri Bridge Bank against the Gaskins and Vogelgesang. This appeal followed.[5]

## II.

Federal jurisdiction is properly invoked pursuant to 12 U.S.C. § 1819(b)(2)(A) and (B) (1988). *See FDIC v. Meyerland Co. (In re Meyerland Co.)*, 960 F.2d 512, 520 (5th Cir.1992) (en banc) ("[T]he district court [ ] take[s] the state court judgment as it finds it, prepare[s] the record as required for appeal, and forward[s] the case to a federal appellate court for review."), *cert. denied,* —— U.S. ——, 113 S.Ct. 967, 122 L.Ed.2d 123 (1993).[6]

---

1. The Honorable Fernando J. Gaitan, Jr., United States District Judge for the Western District of Missouri.

2. The loan guaranties limited the maximum repayment amount to $1,061,432.00 for the Gaskins and to $532,717.00 for Vogelgesang.

3. The judge presiding was the Honorable James Welsh, Circuit Judge for the Seventh Judicial Circuit of Missouri, Division Three.

4. Appellants counterclaimed alleging that the bank's practices invalidated appellants' limited guaranties.

5. After Judge Gaitan reentered the summary judgments, the Missouri Bridge Bank sold Metro North's assets, including the summary judgments, to Boatmen's. Boatmen's was properly substituted as a party respondent before this appeal was filed.

6. This is the first time we have addressed directly the issue of remand to federal court after a case is on appeal in a state court. In *Ward v. Resolution Trust Corp.*, 901 F.2d 694, 695 (8th Cir.1990) (*Ward I*), we did not address directly the merits of removing a pending state appeal under 12 U.S.C. § 1819(b)(2)(B). Instead, we allowed removal of the case because the non-removing party abandoned arguments challenging the removal. In *Ward v. Resolution Trust Corp.*, 972 F.2d 196, 197 (8th Cir.1992) (*Ward II*), *cert. denied,* —— U.S. ——, 113 S.Ct. 1412, 122 L.Ed.2d 783 (1993), we noted without discussion that in *Ward I*, "[t]he RTC removed this case to federal district court, and we held the removal was proper." Thus, while the *Ward* decisions support the removability of this case, neither is dispositive.

Appellants properly invoked the jurisdiction of this court under 28 U.S.C. § 1291 (1988) by filing a notice of appeal from the final judgment entered by the District Court.

 "[O]nce a case has been removed to federal court, it is settled that federal rather than state law governs the future course of proceedings, notwithstanding state court orders issued prior to removal." *Granny Goose Foods, Inc. v. Brotherhood of Teamsters*, 415 U.S. 423, 437, 94 S.Ct. 1113, 1123, 39 L.Ed.2d 435 (1974). Thus, Federal Rule of Civil Procedure 56 and federal case law govern our review of the grants of summary judgment in this case. Boatmen's and the FDIC are entitled to summary judgment against appellants if there are no genuine issues as to any material fact and if they are entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).[7] We review the grants of summary judgment de novo. *United States ex rel. Glass v. Medtronic, Inc.*, 957 F.2d 605, 607 (8th Cir. 1992).

### III.

The Gaskins and Vogelgesang offer numerous arguments challenging their liability under the loan guaranties. They first allege that Metro North improperly disbursed loan funds to Danner, allowed him to misapply the funds, and concealed the wrongdoing by falsifying the loan grid.[8] They next contend that Metro North breached a duty of good faith owed to appellants; offered an inadequate bid upon foreclosure; released appellants from liability by releasing Danner and other guarantors; and failed to maintain HUD reserve funds. We have carefully considered each contention and find that no genuine issue exists as to any material fact and that

Metro North is entitled to judgment as a matter of law.

### A.

The Gaskins and Vogelgesang first contend that Metro North improperly disbursed Joint Venture funds to Danner, who then misapplied them. The improper disbursements, appellants argue, resulted in a failure of consideration by the bank under the loan agreement.

Appellants offer no evidence that Metro North improperly disbursed loan funds to Danner. Danner was the designated agent for the Rolling Hills project and held a Certificate of Authority from the Rolling Hills partners allowing Metro North to disburse loan funds to him without the approval or additional authorization of the other partners and absolving Metro North of any responsibility to verify Danner's requests for loan funds or to oversee his application of the funds. Legal File at 234–36.[9]

Robert Wiley, a former Metro North officer, testified that loan funds were disbursed pursuant to an approved procedure after verification of each construction draw. Wiley testified that though he did not know who authorized this procedure at the outset, it was a "pre-arranged" procedure that was followed over the course of his involvement with the loan. Joint Supp.App. at 59–61. Invoices documenting every item requested to be paid and a detailed check register noting the line item to which each prewritten disbursement check corresponded accompanied each construction draw. After an inspector at the construction site verified that billed work had been completed, the money necessary to cover the construction draw was deposited into the Rolling Hills Joint Venture account and then transferred to the Danner

---

7. The summary judgment standard in Missouri, Missouri Rule of Civil Procedure 74.04, corresponds to the language of the federal rule, though it is not applied in precisely the same manner. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 378–80 (Mo.1993) (en banc).

8. The loan grid is the bank's schematic method of recording disbursements made under the loan.

9. The record on appeal includes the Legal File on Appeal and the Additional Legal File on Appeal prepared for the appeal—now removed—to the Missouri Court of Appeals. In addition, the parties submitted a Joint Supplemental Appendix for purposes of the appeal to this court. To avoid confusion, we refer in this opinion, as appropriate, to either the Legal File, the Additional Legal File, or the Joint Supplemental Appendix.

account for disbursement via the prewritten checks.[10] *Id.* at 57–60. Each disbursement is recorded on a loan grid maintained by Metro North on the Joint Venture account. The Gaskins and Vogelgesang fail to raise any genuine issue of material fact as to the propriety of the disbursements made pursuant to this procedure.

■ The Gaskins and Vogelgesang have failed to present evidence that any of the loan proceeds were applied for any purpose other than to pay verified, completed construction costs. The Rolling Hills apartment complex was fully completed with the loan proceeds. The record is devoid of any evidence that Joint Venture funds were misappropriated by Danner for some other use, or that Metro North improperly transferred the funds to Danner's account, as appellants claim. We thus find no genuine fact issue in the allegations that Metro North improperly disbursed loan funds to Danner which Danner then misapplied.

In support of their claim that loan funds were improperly disbursed and misapplied, the Gaskins and Vogelgesang assert that the loan grid offered into evidence was falsified to hide the improper disbursements. Their sole proof in support of this allegation is the fact that Metro North and its president pleaded guilty to federal charges in North Carolina involving false loan grids, switching credits and accounts, and falsifying bank records. These convictions arise from circumstances that are unrelated to the loans at issue in the present case, do not constitute evidence of wrongdoing in this case, and are inadequate to defeat the bank's motion for summary judgment.

### B.

■ The Gaskins and Vogelgesang contend that the bank breached the "loan agreement" when it disbursed sums in excess of $5,000 to Danner in violation of the Joint Venture Agreement. In making this argument, appellants construe the loan agreement broadly to include the loan-related terms of the Joint Venture Agreement. The Joint Venture Agreement, Section 10.1, provides that "no withdrawal or payment [of funds of the Joint Venture] may be made in excess of $5,000 unless upon the signature of both Danner and Western Capital." Joint Supp.App. at 89. Pam Seymour, the bank officer in charge of the transfer of funds from the Joint Venture account to Danner's account, stated in her deposition that she was not aware of the $5,000 limit. *Id.* at 82. As a matter of law, Metro North could not have breached the loan agreement by disbursing funds in violation of the Joint Venture Agreement § 10.1 because the Joint Venture Agreement is not a loan document and Metro North was never a party to it.

We note that Seymour and the other bank officers disbursed the loan funds under the provisions of the Rolling Hills Certificate of Authority, signed by the Gaskins and Vogelgesang, which does not limit the amount of funds which may be disbursed to Danner and does not require the bank to inquire as to their application. Legal File at 234. Thus, the bank acted within its authority in disbursing funds to Danner under the Certificate of Authority, the validity of which appellants have not challenged.

### C.

The Gaskins and Vogelgesang claim that Metro North violated a duty of good faith owed to the Joint Venture; however, they have failed to offer any evidence in support of this claim. Because of their failure to come forward with such evidence, they have failed to create a genuine issue of material fact on this claim. We therefore need not reach the legal question of whether Metro North owed appellants a duty of good faith. *Manzo v. Metro North State Bank,* 759 S.W.2d 77, 81 (Mo.Ct.App.1988) may be read as suggesting that the bank did not owe a

---

**10.** Danner's account was the R.L. Danner Development Company general contractor account, upon which the checks were written to subcontractors for completed work at the Rolling Hills project. This account is referred to by the parties as the "disbursement account" because the loan funds initially deposited into the Rolling Hills Joint Venture account were transferred immediately to the Danner account for disbursement. The funds do not appear to have been disbursed directly from the Joint Venture account in any instance.

duty of good faith, but we decline to address this question of Missouri law.

### D.

The Gaskins and Vogelgesang argue that Metro North made an inadequate bid upon foreclosure, made a fraudulent loan to Danner, released appellants from their guaranty obligations, and failed to maintain HUD reserve funds. We find these claims meritless, none raising an issue of material fact for determination at trial.

■ The Gaskins and Vogelgesang assert that the funds Metro North is attempting to recover in this action are lacking because Metro North deprived appellants of their proper credits for the collateral when it submitted a grossly inadequate bid at the foreclosure sale. "[I]nadequate sale price alone will not justify setting aside a foreclosure sale," unless there is evidence of impropriety in the sale itself. *Boatmen's Bank of Jefferson County v. Community Interiors, Inc.,* 721 S.W.2d 72, 78 (Mo.Ct.App.1986). After Metro North foreclosed on the Rolling Hills property, the property was offered for sale by the Public Trustee, with proper notice to all involved parties. The Gaskins and Vogelgesang make no allegation of impropriety concerning the sale itself. The sale can only be set aside on the basis of the sale price alone if the sale price was grossly inadequate. *See id.* In *Boatmen's,* the purchaser bid $93,050 for property appraised at $300,-000 or more, a bid more than sixty percent below the appraised value, yet this amount was not so grossly inadequate as to merit the setting aside of the sale. *Id.* at 77. Metro North bid a mere twenty percent below the appraised value of the Rolling Hills project. We thus find, as a matter of law, that the bid was not grossly inadequate.

The Gaskins and Vogelgesang cite *Regional Investment Co. v. Willis,* 572 S.W.2d 191 (Mo.Ct.App.1978), for the proposition that a trial on the adequacy of a foreclosure bid cannot be precluded by summary judgment. *Willis,* however, is easily distinguishable from the instant case. In *Willis,* the adequacy of the bid was not the factor central to the court's decision to reverse summary judgment; rather, the fairness of the trustee's sale was questioned due to improper behavior by the lender. Metro North's successful bid for the Rolling Hills property simply does not present any issue of material fact for trial.

### E.

■ Next, the Gaskins and Vogelgesang claim Metro North made a loan to Danner so that he would make his capital call, without disclosing this fact to them, and thus fraudulently induced appellants to continue to make their capital calls. They also argue that Metro North breached a duty of good faith to appellants in settling with, agreeing not to sue, and making another loan to Danner. These arguments are meritless. The Gaskins and Vogelgesang were obligated by the Plum Creek Partnership Agreement to make capital contributions when necessary, Legal File at 214, regardless of any arrangement between Metro North and Danner. "There is no confidential or fiduciary relationship between a bank and a customer borrowing funds," and thus the bank had no duty to disclose its dealings with Danner to appellants. *Centerre Bank of Kansas City v. Distributors, Inc.,* 705 S.W.2d 42, 53 (Mo.Ct. App.1985). In our discussion above, we declined to decide whether the bank owed a duty of good faith to the Gaskins and Vogelgesang; but, even applying the asserted duty of good faith, "honesty in fact in the conduct or transaction concerned," we cannot say that any issue of material fact exists, as appellants have offered no evidence of dishonesty on the part of the bank. Mo.Rev. Stat. § 400.1–201(19) (1986); *See Rigby Corp. v. Boatmen's Bank and Trust Co.,* 713 S.W.2d 517, 526–27 (Mo.Ct.App.1986).

### F.

■ Claiming that Metro North did not expressly reserve its rights pursuant to Missouri Revised Statute § 400.3–606(1)(a) (1986), which was replaced by § 400.3–605(i) (Supp.1993), the Gaskins and Vogelgesang contend that the bank effectively released them from their guaranty obligations when it released other similarly situated guarantors. We find that no release was intended nor did

one occur through any failure by the bank to reserve its rights. As a matter of law, the settlements with and releases of similarly situated guarantors have no impact on appellants' liability under their guaranties. The Gaskins and Vogelgesang expressly agreed, when they signed the guaranties, to pay the debt regardless of the release of other guarantors. The guaranties set forth:

> The obligations of the Guarantor, and each of them, under this agreement and those of any other Guarantor who may have guaranteed or who hereafter guarantee any indebtedness of Customer are and will be joint and several, and Bank may release or settle with any one or more of the Guarantors at any time without affecting the continuing liability of the remaining Guarantor or Guarantors.

Legal File at 35–36. This provision preserves the bank's cause of action. Mo.Rev. Stat. § 400.3–605(i); *Commerce Bank of St. Louis v. Wright,* 645 S.W.2d 17, 20–22 (Mo. Ct.App.1982); *see Manzo,* 759 S.W.2d at 81–82. In both *Manzo* and *Wright,* the bank's cause of action was preserved because the guarantors signed guaranties containing language obligating them on the debt regardless of the release of other guarantors. Such language constitutes a waiver of discharge and effectively "reserves" the bank's rights against remaining guarantors in the event it releases one or more guarantors. *See* Mo. Rev.Stat. § 400.3–605(i)(i, ii) (Supp.1993) (providing for waiver of suretyship[11] defenses through a separate agreement).

### G.

■ The Gaskins and Vogelgesang claim that the bank's failure to maintain a reserve fund made it difficult or impossible for them to obtain permanent financing for the Rolling Hills project. This argument is unsubstantiated[12] and is directly controverted by the unchallenged deposition testimony of Gary Silversmith of the Patrician Mortgage Company, a potential permanent lender. Silversmith explained that Patrician declined to provide permanent financing because the project failed to meet Patrician's "lease up" requirement. Joint Supp.App. at 223. This precondition wholly outside Metro North's control, rather than lack of a reserve fund, kept the Rolling Hills project from obtaining permanent financing. Additionally, under the *D'Oench Duhme* doctrine[13] and 12 U.S.C. § 1823(e) (Supp. IV 1992), the Gaskins and Vogelgesang cannot assert a claim against the FDIC unless such claim is based upon a recorded document in the bank's files that imposes a binding bilateral obligation on the parties.[14] *See North Arkansas Medical Ctr. v. Barrett,* 962 F.2d 780, 786–88 (8th Cir.1992) (*quoting Langley v. FDIC,* 484 U.S. 86, 91–92, 108 S.Ct. 396, 401, 98 L.Ed.2d 340 (1987)). No documents have been offered evidencing an agreement with the bank to maintain reserves to fund a permanent loan takeout. Thus, as a matter of law, this claim must fail.

### H.

■ The Gaskins and Vogelgesang assert a complete legal defense to the bank's suit on their personal guaranties based upon *Boatmen's First National Bank of Kansas City v. Bogina Petroleum Engineers,* 794 S.W.2d 703 (Mo.Ct.App.1990). In *Bogina,* an action on a note rather than on a guaranty, the court stated in a footnote that where the makers and the guarantors on a note are the

---

11. Mo.Rev.Stat. § 400.1–201(40) (1986), defines surety to include guarantors.

12. The documents appellants offer in support of their contention that the bank specifically and expressly agreed to maintain reserve funds are utterly unrelated to the issue of reserve funds: one is the sixth page of letter to which Metro North was not a party; another is a letter concerning a Danner development in Florida; and a third is a portion of a deposition discussing the "lease-up" requirement that needed to be satisfied before permanent financing would be available.

13. *D'Oench Duhme & Co. v. FDIC,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942).

14. The FDIC was not a party at the trial court level, but may present arguments based upon the *D'Oench Duhme* doctrine and 12 U.S.C. § 1823(e) for the first time on appeal and provide an additional basis for the District Court's judgment. *See Union Fed. Bank of Indianapolis v. Minyard,* 919 F.2d 335, 336 (5th Cir.1990).

same parties, the lender can only recover on the note, because "[i]n effect the [defendants] simply obligated themselves twice for the same debt—once on the note and again on the 'guaranty.' The 'guaranty' was therefore not a guaranty of the note." *Id.* at 705 n. 2. Thus, the court will not enforce the guaranties in a suit seeking recovery on the note. *Id.* The Gaskins and Vogelgesang assert, therefore, that because the bank sued appellants on the guaranties rather than the note, appellants are absolved of liability.

*Bogina* is distinguishable from the present case. In the present case, the note was executed by the Joint Venture, while the guaranties were executed personally by appellants, who were investors and partners in Plum Creek, a general partnership which was a partner in the Rolling Hills Joint Venture. Not all of the Rolling Hills partners were guarantors. Thus, the guaranties are collateral to the obligation on the note and are not merely a second obligation by the same parties on the same debt. As a matter of law, we find that *Bogina* provides no defense to liability on the limited guaranties.

### IV.

■ The Gaskins and Vogelgesang contend that the amount at issue in this suit is a genuine issue of material fact for determination at trial. To the contrary, we find that the amount owed to Boatmen's and the FDIC is a sum certain. The deficiency exceeds the limited loan guaranties, thus, the guarantied amounts are the sum certain due. The judgment appealed from awarded Boatmen's and the FDIC the entire amount guarantied by each appellant, plus interest through June 17, 1992, in the amount of $645,886.24 against the Gaskins and $322,943.12 against Vogelgesang. The judgment also awarded additional daily interest after June 17, 1992, at the rate of $530.72 for the Gaskins and $265.36 for Vogelgesang. Legal File at 699. We affirm the judgment as to the amounts due and owing.

**15.** Metro North's action against Robert H. Zimmerman was filed originally in the Circuit Court of Clay County, Missouri, along with the guaranty actions against appellants. Zimmerman was

### V.

In September 1991, Judge Brook Bartlett of the United States District Court for the Western District of Missouri granted summary judgment in favor of Boatmen's and the FDIC and against Robert Zimmerman, another Plum Creek partner and Rolling Hills loan guarantor, on claims and defenses identical to those presented in this case. *Metro North State Bank v. Zimmerman*, No. 89-0482-CV-W-9 (W.D.Mo. September 10, 1991).[15] Boatmen's and the FDIC argue that the doctrines of *res judicata* and collateral estoppel bar relitigation of the issues and claims resolved in *Zimmerman*. Because we dispose of the present case on the merits and reach conclusions that are completely consistent with *Zimmerman*, we need not and do not address these arguments.

### VI.

For the reasons stated, we affirm the judgments in favor of Boatmen's and the FDIC and against the Gaskins and Vogelgesang as to liability, the amounts due and owing, and the counterclaim.

the only loan guarantor to remove his case to federal court prior to the state court's entry of summary judgment. The judgment in *Zimmerman* was not appealed.