**DiVALL INSURED INCOME FUND LIMITED PARTNERSHIP, a Wisconsin Limited Partnership, Appellant,**

v.

**BOATMEN'S FIRST NATIONAL BANK OF KANSAS CITY, Appellee.**

No. 95–1081.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 11, 1995.

Decided Nov. 13, 1995.

Leonard B. Rose, Kansas City, Missouri, argued (Martha A. Halvordson, on the brief), for appellant.

Steven E. Mauer, Kansas City, Missouri, argued (John M. Edgar and Lisa J. Henoch, on the brief), for appellee.

Before BOWMAN, BRIGHT, and BEAM, Circuit Judges.

BRIGHT, Circuit Judge.

DiVall Insured Income Fund, L.P. ("DiVall L.P." or "DiVall") filed this declaratory judgment action against Boatmen's First National Bank of Kansas City ("Boatmen's") claiming that it was not liable on a promissory note due to lack of consideration. Boatmen's had acquired the note from the Federal Deposit Insurance Corporation ("FDIC") through a purchase and assumption agreement. The district court granted summary judgment for Boatmen's determining that the defense was barred by the federal holder in due course doctrine. The district court, however, reject-

ed Boatmen's additional claims that 12 U.S.C. § 1823(e) and the common law *D'Oench Duhme* doctrine also barred DiVall from raising the defense of lack of consideration against enforcement of the note.

DiVall appeals asserting that state rather than federal law should govern the holder in due course issue. In light of the United States Supreme Court's decision in *O'Melveny & Myers v. FDIC*, — U.S. —, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994), we conclude that the extensive statutory framework of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA")[1] implicitly excludes federal common law defenses not specifically mentioned in the statute. Accordingly, we reverse the summary judgment and remand for trial.

## I. BACKGROUND

For the purposes of this appeal, we will assume the following facts to be true. In April 1991, Gary DiVall and Paul Magnuson, the two general partners of DiVall Insured Income Fund, L.P., executed a promissory note (the "Note") for $600,000 payable to Metro North State Bank ("Metro North"). The general partners also executed a security agreement in favor of Metro North. The stated purpose of the Note was to provide DiVall L.P. with working capital.

The loan agreement provided that advances on the loan could be made by wire transfer to DiVall L.P. pursuant to instructions provided by DiVall L.P. Metro North subsequently wired the funds, at the two general partners' instruction, to a DiVall Reserves account and not to a DiVall L.P. account.[2] DiVall L.P. maintains that the money was then used for the personal benefit of the general partners and not for the benefit of DiVall L.P. Although payments were made on the Note, none were made by DiVall L.P. Gary DiVall and Paul Magnuson have since resigned as the general partners of DiVall L.P.

In November 1992, Metro North entered receivership under the FDIC. The following

---

1. Pub.L. No. 101–73, 103 Stat. 183.

2. The DiVall Reserves Account was for the benefit of DiVall Real Estate Investment Corporation and not for DiVall L.P.

April, Boatmen's First National Bank of Kansas City acquired assets which formerly belonged to Metro North from the FDIC pursuant to a purchase and assumption agreement.[3] The Note was among these assets.

After the Note went into default, Boatmen's demanded that DiVall L.P. satisfy the outstanding debt. DiVall filed this declaratory judgment action claiming that the Note was unenforceable due to lack of consideration and seeking to prevent Boatmen's from foreclosing on certain collateral. Boatmen's filed a motion to dismiss for failure to state a claim. Both parties submitted affidavits and other documents in support of and in opposition to the motion to dismiss. Because matters outside the pleadings were presented and not excluded by the district court, the district court treated the motion as a motion for summary judgment.

Boatmen's argued that it possessed the rights of a holder in due course, and as such was not subject to the personal defenses asserted by DiVall. The district court ruled that Boatmen's was not a holder in due course under Missouri law because the Note did not qualify as a negotiable instrument. Nonetheless, the district court held that the FDIC had the rights of a holder in due course under federal common law and that Boatmen's had attained those rights through the purchase and assumption agreement.[4]

The district court also briefly addressed the issue of whether the *D'Oench Duhme* doctrine and/or 12 U.S.C. § 1823(e) applied to the case. The district court held that DiVall's pleading did not assert a claim based on an unwritten agreement and thus the *D'Oench Duhme* doctrine and its statutory analogue did not apply.

## II. DISCUSSION

We review the district court's granting of summary judgment de novo and apply the same standards as did the district court. *Educational Employees Credit Union v. Mutual Guar. Corp.*, 50 F.3d 1432, 1436 (8th Cir.1995).

## A. THE DEVELOPMENT OF FEDERAL COMMON LAW POWERS OF THE FDIC

In *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), the Supreme Court created a federal common law rule barring the invocation of "secret agreements" which were not recorded in a bank's records as defenses against payment of a promissory note. *See generally*, James J. White & Robert S. Summers, Uniform Commercial Code § 14–12, at 740 (3d ed. 1988); *Murphy v. FDIC*, 61 F.3d 34, 38 (D.C.Cir.1995). In *D'Oench*, a securities broker had sold certain bonds to a bank. When the bonds defaulted, the broker executed a promissory note to the bank in the amount of the bonds, pursuant to a secret agreement that the bank would not request payment of the note. The arrangement effectively concealed the worthlessness of the bonds and misrepresented to bank examiners the value of the bank's assets. When the bank failed, the FDIC became the bank's receiver and in its capacity as receiver demanded payment of the note. The broker asserted the secret agreement and lack of consideration as defenses. The Supreme Court held that federal common law prohibited the obligor from raising the defenses. *Id.* at 461–62, 62 S.Ct. at 681–82.

Although the Supreme Court acknowledged that the arrangement was not an outright violation of the Federal Reserve Act, it created the common law rule to facilitate the federal policy behind the Act. *Id.* at 459, 62 S.Ct. at 680. The Court stated that the Act revealed a federal policy to protect the FDIC, and the public funds which it administers, against misrepresentations as to the securities or other assets in the portfolios of

---

3. In a typical purchase and assumption agreement, the FDIC arranges for the sale of the bulk of a failed bank's assets and liabilities to a healthy bank. *See Gunter v. Hutcheson*, 674 F.2d 862, 865 (11th Cir.1982).

4. Under the "shelter principle", a transferee is vested with the rights of the transferor. *See* Uniform Commercial Code § 3–203(b) (1990). Thus by taking the instrument from a federal holder in due course, Boatmen's could assert the rights of a holder in due course. *See FDIC v. Newhart*, 892 F.2d 47, 50 (8th Cir.1989).

the banks which the FDIC insures. *Id.* at 457, 62 S.Ct. at 679.

Congress subsequently adopted the *D'Oench* decision in the 1950 amendments to the Federal Deposit Insurance Act.[5] Congress amended the provision in 1989 as part of FIRREA.[6] The amendment broadened the statute to protect assets acquired by the FDIC when it acts as receiver for a failed bank. The current version may be found at 12 U.S.C. § 1823(e). Section 1821(d)(9)(A), which was also a part of FIRREA, further provides that "any agreement which does not meet the requirements set forth in section 1823(e) of this title shall not form the basis of, or substantially comprise, a claim against the [FDIC]." 12 U.S.C. § 1821(d)(9)(A) (1994).

The *D'Oench* decision also spawned the development of a body of federal common law which protected the FDIC against certain defenses as well as affirmative claims. *See* White & Summers, Uniform Commercial Code § 14–12, at 740; Fred Galves, *FDIC and RTC Special Powers in Failed Bank Litigation,* 22 Colo.Law. 473 (1993); Marie T. Reilly, *The FDIC as Holder in Due Course: Some Law and Economics,* 1992 Colum.Bus.L.Rev. 165, 176–97 (1992). These federal common law rules served to advance federal policy by furthering the FDIC's ability to protect and transfer the assets of failed banks. *See FDIC v. Newhart,* 892 F.2d 47, 50 (8th Cir.1989); *FDIC v. Gulf Life Ins. Co.,* 737 F.2d 1513, 1517–18 (11th Cir.1984).

Among these federal common law protections are the *D'Oench Duhme* doctrine and the federal holder in due course doctrine. The common law *D'Oench Duhme* doctrine is roughly analogous to the statutory provision but does provide the FDIC with broader protections in certain instances. *See E.I. du*

*Pont de Nemours & Co. v. FDIC,* 32 F.3d 592, 596–97 (D.C.Cir.1994); *Inn At Saratoga Associates v. FDIC,* 60 F.3d 78, 81–82 (2d Cir.1995). The federal holder in due course doctrine bars makers of promissory notes from asserting personal defenses against the FDIC and its successors even though the defenses are based on a written agreement. *Sunbelt Sav., FSB Dallas, Texas v. Montross,* 923 F.2d 353, 355 modified on other grounds in *RTC v. Montross,* 944 F.2d 227 (5th Cir.1991); *FDIC v. Aetna Cas. & Sur. Co.,* 947 F.2d 196, 203 (6th Cir.1991).

## B. *O'MELVENY* AND THE FEDERAL COMMON LAW

■ In *O'Melveny,* the Supreme Court considered whether, in a suit by the FDIC as receiver of a federally insured bank, federal or state law governed the tort liability of attorneys who provided services to the bank. —— U.S. at ——, 114 S.Ct. at 2051. After the FDIC took over as receiver, investors claiming that they had been deceived in connection with two real estate syndications operated by the failed bank demanded refunds. *Id.* at ——, 114 S.Ct. at 2052. The FDIC caused the bank to rescind the syndications and return the investors' money plus interest. *Id.* The FDIC then sued the bank's attorneys, alleging professional negligence and breach of fiduciary duty, presumably for failing to inform the bank of the *ultra vires* acts of its officers. *Id.* The attorneys moved for summary judgment claiming that, under California law, knowledge of the conduct of the bank's controlling officers must be imputed to the bank and thus to the FDIC which, as receiver, stood in the shoes of the bank. *Id.* The FDIC asserted that, once the FDIC became the bank's receiver,

---

**5.** The provision read,

No agreement which tends to diminish or defeat the right, title or interest of the [FDIC] in any asset acquired by it under this section, either as security for a loan or by purchase, shall be valid against the [FDIC] unless such agreement (1) shall be in writing, (2) shall have been executed by the bank and the person or persons claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the bank, (3) shall have been approved by the board of

directors of the bank or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) shall have been, continuously, from the time of its execution, an official record of the bank.

Pub.L. No. 81–797, 64 Stat. 873, 889 (1950).

**6.** Congress enacted FIRREA in response to the growing crisis in the nation's banking and savings and loan industries. *See Gibson v. Resolution Trust Corp.,* 51 F.3d 1016, 1020 (11th Cir. 1995).

federal common law determines whether the knowledge of corporate officers acting against the corporation's interest will be imputed to the corporation. *Id.* The Supreme Court held that state law governs the imputation defense and remanded the case for proceedings in accordance with that determination. *Id.* at ——, 114 S.Ct. at 2056.

Although *O'Melveny* does not specifically involve the federal common law holder in due course doctrine, it does state some general propositions which are inconsistent with the existence of that common law doctrine. Other circuits have already recognized the significance of *O'Melveny* beyond the narrow area of imputation. *See Murphy,* 61 F.3d at 35 (holding that *O'Melveny* removes the federal common law *D'Oench Duhme* doctrine as a separate bar to claims); *RTC v. Maplewood Investments,* 31 F.3d 1276, 1294 (4th Cir. 1994) (holding that *O'Melveny* creates a heavy presumption in favor of applying state law rules of negotiability); *FDIC v. Massingill,* 30 F.3d 601, 604 (5th Cir.1994) (holding that, in light of *O'Melveny,* court should not create federal common law rule of decision with respect to defendant's ability to assert the defense of impairment of collateral).

■ In *O'Melveny,* the Court stated that it would not "adopt a court-made rule to supplement federal statutory regulation that is comprehensive and detailed; matters left unaddressed in such a scheme are presumably left subject to the disposition provided by state law." *Id.* at ——, 114 S.Ct. at 2054 (citing *Northwest Airlines, Inc. v. Transport Workers,* 451 U.S. 77, 97, 101 S.Ct. 1571, 1583, 67 L.Ed.2d 750 (1981) and *Milwaukee v. Illinois,* 451 U.S. 304, 319, 101 S.Ct. 1784, 1793, 68 L.Ed.2d 114 (1981)). The Court indicated that FIRREA is such a comprehensive regulation. *Id.*

The Court then turned to 12 U.S.C. § 1821(d)(2)(A)(i) which, as amended by FIRREA, provides that the FDIC " 'shall

... by operation of law, succeed to—all rights, titles, powers, and privileges of the insured depository institution,' " and explained that this provision "appears to indicate that the FDIC as receiver 'steps into the shoes' of the failed S & L," so that " 'any defense good against the original party is good against the receiver.' " *Id.* (citations omitted).

The Court noted that certain provisions of FIRREA specifically created special federal rules of decision regarding claims by, and defenses against, the FDIC as receiver. *Id.* After listing some of these provisions, including 12 U.S.C. § 1821(d)(9)(A), the Court stated the canon of statutory construction, *Inclusio unius, exclusio alterius.*[7] *Id.* The Court concluded this portion of the opinion by stating,

> It is hard to avoid the conclusion that § 1821(d)(2)(A)(i) places the FDIC in the shoes of the insolvent S & L, to work out its claims under state law, except where some provision in the extensive framework of FIRREA provides otherwise. *To create additional "federal common-law" exceptions is not to "supplement" this scheme, but to alter it.*

*Id.* (emphasis added).

*O'Melveny* states that federal courts may not invoke federal common law to "supplement" the specific exceptions provided by FIRREA. When Congress enacted the comprehensive regulatory framework of FIRREA, it preempted the federal common law rules that restricted the claims and defenses which parties could raise against the FDIC. Accordingly, we hold that *O'Melveny* removes the federal common law *D'Oench Duhme* doctrine and the federal holder in due course doctrine as separate bars to DiVall's defense.[8] *See Murphy,* 61 F.3d at 38–40; *FDIC v. O'Melveny & Myers,* 61 F.3d 17, 18–19 (9th Cir.1995). If DiVall's defense is to be barred, it must be barred either by a

---

**7.** The inclusion of one is the exclusion of the other. *Black's Law Dictionary* 687 (5th ed., 1979).

**8.** Just over two months after the Supreme Court decided *O'Melveny,* this court issued a decision in *Metro North State Bank v. Gaskin,* 34 F.3d 589

(8th Cir.1994). In *Gaskin,* this court referred approvingly to the common law *D'Oench Duhme* doctrine. *Id.* at 595. Nevertheless, *Gaskin* was briefed and argued before the *O'Melveny* decision. This court has never previously addressed the impact of *O'Melveny* on the *D'Oench Duhme* doctrine.

specific provision of FIRREA or by state law.

## C. HOLDER IN DUE COURSE PRO-TECTIONS

 Boatmen's has not pointed to any specific provision of FIRREA which confers holder in due course status on the FDIC. Accordingly, the holder in due course issue must be decided under state law.

Under Missouri law, a holder in due course takes an instrument free from all "personal" or "ordinary" defenses of any party to the instrument with whom the holder has not dealt. Mo.Ann.Stat. § 400.3–305 (Vernon 1994) and comments; *see generally* White & Summers, Uniform Commercial Code § 14–9, at 731. Lack of consideration is a personal defense which a debtor cannot assert against a holder in due course. Mo.Ann.Stat. § 400.3–305 (Vernon 1994); *Kreutz v. Wolff,* 560 S.W.2d 271, 276 (Mo.App.1977).

 In order for the holder of a note to be a holder in due course, the note must be a negotiable instrument. *Centerre Bank of Branson v. Campbell,* 744 S.W.2d 490, 495 (Mo.App.1988) (citing *Illinois State Bank v. Yates,* 678 S.W.2d 819, 823–24 (Mo.App. 1984)). In *Centerre,* the Missouri Court of Appeals held that the use of a variable interest rate prevents a note from being a negotiable instrument. *Id.* at 498. The Note here in question employs a variable interest rate.[9] Although Missouri changed its laws in 1992 to include instruments with variable interest rates as negotiable instruments,[10] the Note here in question was executed in 1991. Thus the Note is not a negotiable instrument and, by its acquisition of the Note, Boatmen's does not become a holder in due course under Missouri law.

## D. 12 U.S.C. § 1823(e)

 Boatmen's claims, in the alternative, that the summary judgment should be sustained because § 1823(e) bars DiVall from asserting its defense. The statutory provision, as modified by FIRREA, reads:

No agreement which tends to diminish or defeat the interest of the [FDIC] in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the [FDIC] unless such agreement—

(A) is in writing,

(B) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,

(C) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and

(D) has been, continuously, from the time of its execution, an official record of the depository institution.

12 U.S.C. 1823(e) (1994).

DiVall argues that its asserted defense of lack of consideration satisfies all the requirements to present this defense outside the bar of § 1823(e). DiVall alleges that Metro North violated section 2.3 of the loan agreement when it failed to transfer the loan proceeds to DiVall L.P. Section 2.3 of the loan agreement provides,

Each Loan advance made by Bank may, for mutual convenience, be deposited to account of Borrower with Bank. At Borrower's option, advances may be made by

---

9. The Note provides,
 This Note shall bear interest at two percent (2%) above the Base Rate being charged by Metro North State Bank on the date of this Note. The interest rate shall change on the 15th day of each month to correspond to any changes in the Base Rate charged by the institution specified above.
 Jt.App. at 12.

10. Mo.Ann.Stat. § 400.3–112(b) (Vernon 1994) provides, "Interest may be stated in an instrument as a fixed or variable amount of money or it may be expressed as a fixed or variable rate or rates." "Instrument" in this context means a negotiable instrument. Mo.Ann.Stat. § 400.3–104(b) (Vernon 1994).

wire transfer to Borrower pursuant to wire instructions provided by it.

Jt.App. at 62. DiVall contends that because Metro North deposited the funds in an account which did not belong to the borrower, DiVall L.P., Metro North breached the loan agreement. This condition allegedly establishing the breach rests on a written provision in the loan agreement. DiVall asserts that the loan agreement was signed by the executive vice president of Metro North, approved by the board or by a loan committee, and was an official record of the bank (i.e. kept in the bank's loan file). DiVall argues that the agreement satisfies all the exclusionary requirements of § 1823(e) and thus its defense of lack of consideration can be asserted against the FDIC and its transferee, Boatmen's.

Boatmen's argues, to the contrary, that DiVall's defense is based on an unwritten agreement in violation of § 1823(e). Boatmen's claims that DiVall is attempting to assert a new condition into the loan agreement—that Metro North would not rely on information regarding disbursement of the proceeds, but rather would inquire as to the ownership of the bank account. In *Langley v. FDIC*, 484 U.S. 86, 96, 108 S.Ct. 396, 403, 98 L.Ed.2d 340 (1987), the Supreme Court held that "[a] condition to payment of a note, including the truth of an express warranty, is part of the 'agreement' to which the writing, approval, and filing requirements of 12 U.S.C. § 1823(e) attach." Boatmen's argues that because this condition is not expressed in the loan agreement, the claim should be barred by § 1823(e).

■ We reject Boatmen's characterization of the claim. DiVall alleges that Metro North breached its contractual obligation under the loan agreement and that this breach amounted to a failure of consideration. Boatmen's essentially argues that it satisfied the requirements of section 2.3 of the loan agreement and therefore DiVall must be asserting a new condition. That an interpretive issue exists in the asserted defense does not mean that the defense is barred. "A written obligation does not become unwritten just because there is a question about its meaning." *FDIC v. O'Neil*, 809 F.2d 350, 354 (7th Cir.1987). So long as DiVall bases its defense solely upon a written condition that satisfies the stringent requirements of § 1823(e), its defense does not become barred. The district court properly rejected Boatmen's contention that this statutory provision barred Boatmen's from asserting that the Note in issue lacked consideration.

We express no opinion at this time as to whether any breach occurred or if such breach would create a defense of failure of consideration in the circumstances of this case.

## III. CONCLUSION

For the reasons stated above, we hold that DiVall's defense of lack of consideration is not barred by Missouri law, 12 U.S.C. § 1823(e) or by any federal common law making Boatmen's a holder in due course. Accordingly, we reverse the summary judgment of dismissal and remand this case for further proceedings.