United States Court of Appeals
FOR THE EIGHTH CIRCUIT

_____

No. 96-4018

_____

RTC Mortgage Trust 1994-N2, a    \*
Delaware Business Trust,    \*
   \*
        Appellee,    \*
   \*
      v.    \*   Appeal from the United States District
   \*   Court for the Western District of
Myron W. Haith; Richard Brock;    \*   Missouri.
Stuart Kahn,    \*
   \*
        Appellants.    \*

_____

Submitted: September 11, 1997
Filed: January 6, 1998

_____

Before HANSEN,  ROSS and MURPHY Circuit Judges.

_____

ROSS, Circuit Judge.

Myron Haith, Richard Brock and Stuart Kahn (appellants) appeal from the district court's summary judgment ruling in favor of RTC Mortgage Trust (Trust) on the Trust's claim for the payment of basic interest under Guaranties executed by the appellants.  We affirm in part and remand in part.

I.

On August 12, 1986, Executive Hills North, Inc. (Executive Hills) executed and delivered to Home Savings Association of Kansas City (Home Savings) two promissory notes, whereby Executive Hills agreed to pay $17.5 million plus interest. The notes were secured by a deed of trust on property known as the Tech Buildings owned by Executive Hills.

In the late summer of 1989, appellant Myron Haith met with David Feingold at Metro North State Bank (Metro North) seeking an extension of the due date and modification of the terms of a loan agreement he and his partners, Richard Brock and Stuart Kahn, had with Metro North for a project known as St. Louis Air Cargo Services (the SLAC loan). According to Haith, the SLAC loan extension was provided, but only upon the condition that the appellants purchase the Tech Buildings owned by Executive Hills and assume its loan held by Metro North and its affiliated savings association, Home Savings. The appellants were required to assume notes, which were modified versions of the two promissory notes executed in 1986 by Executive Hills and which had by then become financially insecure. Accordingly, the appellants formed a Missouri general partnership called Exec Tech Partners for the express purpose of purchasing the Tech Buildings.

On December 29, 1989, Executive Hills, the Exec Tech Partners, and Home Savings entered into an Assumption and Modification Agreement (the A&M Agreement), whereby the Exec Tech Partners assumed four million dollars of Executive

Hills' indebtedness evidenced by the promissory notes. The A&M Agreement provided that interest was to accrue until December 31, 1994. Also on December 29, 1989, the appellants each executed and delivered to Home Savings separate but identical limited unconditional guaranties of certain obligations under the A&M Agreement (Guaranties), including the payment of basic interest on the principal balance due and owing on the promissory notes, as modified by the A&M Agreement. Under the Guaranties, basic interest accrued until the "date of demand." The A&M Agreement provided that Home Savings' "sole recourse shall be against the [Tech Buildings]" and that Home Savings "shall not be entitled to recover any deficiency judgment against the Partnership or the Partners." However, the A&M Agreement also set forth an exception to the otherwise non-recourse nature of the obligation with respect to the payment of basic interest:

> Notwithstanding the foregoing limitation of liability, the Partnership (and to the extent provided in the Guaranty, each of the Guarantors, as such terms are hereinafter defined) shall be fully liable (1) for the payment, in accordance with the terms of this Note, of the Basic Interest as defined above . . . .

A&M Agreement, page 7.

According to the appellants, as part of the inducement for the deal, Metro North agreed to loan the appellants additional money for the purpose of constructing or rehabilitating existing tenant improvements in the Tech Buildings. The A&M Agreement acknowledges the possibility that tenant improvement loans might be made when it defines that term to "mean such funds as are hereafter loaned to [the appellants]

-3-

by a financial institution or other person and used for tenant improvements to the [Tech Buildings] to enable Partnership to enter into leases with new tenants to occupy space therein."

On March 15, 1991, the RTC was appointed receiver of Home Savings. Among the assets acquired by RTC were the promissory notes, the A&M Agreement and the Guaranties. The record indicates the RTC caused notice of the statutory claims to be published on three separate occasions, advising that the claims bar date under the Financial Institutions Reform, Recovery and Enforcement Act of 1989 (FIRREA) was July 1, 1991, and that claims not brought by that date would be barred. The record also shows that prior to the claims bar date, Myron Haith met with representatives of the RTC and was aware of RTC's involvement with Home Savings.

On December 23, 1993, the appellants as Exec Tech Partners, filed a voluntary Chapter 11 bankruptcy. Through successive assignments, RTC Mortgage Trust acquired all right, title and interest of the RTC in and to the promissory notes, the A&M Agreement and the Guaranties. On July 24, 1995, the Trust brought this action on the Guaranties only, seeking payment of basic interest. The appellants initially brought several counterclaims which were dismissed by the district court for lack of jurisdiction based upon the appellants' failure to file an administrative claim with the RTC prior to the July 1, 1991 claims bar date.

The district court granted summary judgment in favor of the Trust and against the appellants, awarding damages in the amount of $741,816.97 in unpaid basic interest

and other costs. In response, the appellants filed a motion to alter or amend the judgment and on October 7, 1996, the district court amended the part of the judgment relating to the calculation of interest, finding that the date on which basic interest ceased to accrue was December 31, 1994, pursuant to the A&M Agreement, instead of July 24, 1995, the date this suit was filed. Accordingly, damages were reduced to $594,126.20.

## II.

Relying on Boatmen's First Nat'l Bank v. Bogina Petroleum Engineers, 794 S.W.2d 703, 705 n.2 (Mo. Ct. App. 1990)(Bogina), the appellants first argue that the Guaranties are void and unenforceable because the appellants obligated themselves twice on the same debt -- once on the A&M Agreement and again on the Guaranties, thereby rendering the Guaranties a nullity.

A guaranty is a "collateral agreement for performance of an undertaking of another. It imports two different obligations, that of principal debtor and that of guarantor." Mobil Oil Corp. v. Days, 618 S.W.2d 286, 287 (Mo. Ct. App. 1981). Relying on Mobil Oil, the Bogina court stated in dicta that when the makers and the guarantors on a note are the same parties, the lender can only recover on the note because "[i]n effect the [guarantors] simply obligated themselves twice for the same debt -- once on the note and again on the 'guaranty.' The 'guaranty' was therefore not a guaranty of the note." Bogina, 794 S.W.2d at 705 n.2. Thus, according to the appellants, Bogina requires the conclusion in the present case that the Guaranties are

unenforceable because they are merely duplicative of the appellants' obligation already existing under the A&M Agreement.

We are averse to apply <u>Bogina</u> in the instant case for several reasons. First, the quoted portion from <u>Bogina</u>, which is an action on a note rather than on a guaranty, is merely dicta and has no binding effect upon this court. Second, <u>Bogina</u>'s legal conclusion expands the holding of <u>Mobil Oil Corp.</u>, where the court simply recited hornbook law that a guaranty "imports two different obligations, that of principal debtor and that of guarantor," and further that "[t]he liability of a guarantor does not arise in absence of a debtor's liability on the principal undertaking." 618 S.W.2d at 287. In contrast to <u>Bogina</u> and the present case, the issue in <u>Mobil Oil</u> was the extent of the guarantor's liability where the underlying obligation was found to be unenforceable.

Finally, we refrain from applying <u>Bogina</u> for the same reasons set forth by another panel of this court in <u>Metro North State Bank v. Gaskin</u>, 34 F.3d 589, 595-96 (8th Cir. 1994). In <u>Metro North</u>, the note was executed by the Joint Venture, while the guaranties were executed personally by partners in Plum Creek, a general partnership which was in turn a partner in the Rolling Hills Joint Venture. Because not all of the Rolling Hills partners were guarantors, the court held that the guaranties were collateral to the obligation on the note and "not merely a second obligation by the same parties on the same debt." <u>Id</u>. at 596.

As in <u>Metro North</u>, even if we chose to apply the rationale set forth in <u>Bogina</u>,

although we've noted our reluctance to do so, this is not the same obligation by the same parties on the same debt. A review of the A&M Agreement and the Guaranties illustrates that the two documents impart different obligations. The A&M Agreement provides that the appellants shall be liable for, inter alia, misapplication of proceeds, failure to use revenues, and return or reimbursement of personalty, as well as the payment of basic interest. In contrast, the appellants' obligation under the Guaranties is limited to the payment of basic interest in the amount of 6% and attorney's fees. The appellants, signing individually as guarantors, do not guarantee the payment of principal, default interest, additional interest or other charges undertaken by Exec Tech Partners. Moreover, the A&M Agreement was between Exec Tech Partners and the bank and was executed by Haith, Brock and Kahn in their capacities as partners on behalf of the partnership only and not in their individual capacities. In contrast, the Guaranties were signed by Haith, Brock and Kahn as individuals.

To follow Bogina would deprive the Trust of the benefit of its bargain based on the clear intention of the parties at the time the Guaranties were executed. There is no question the appellants intended to obligate themselves to the payment of basic interest. It would be wrong to allow the appellants to avoid their clear obligation on the basis of a technicality created by a state court in dicta.

III.

We next turn to the question of damages. Under the terms of the Guaranties, basic interest accrued until "date of demand," whereas the A&M Agreement provided

for the accrual of basic interest until December 31, 1994. The district court initially awarded damages based on its conclusion that basic interest accrued until this lawsuit was filed on July 24, 1995. However, on the appellants' motion to alter or amend the judgment, the court modified the award of basic interest, concluding instead that the A&M Agreement limited the accrual of basic interest to December 31, 1994, and reduced total damages to $594,126.20.

In an attempt to argue that summary judgment in favor of the Trust was inappropriate, the appellants now assert that a material fact exists with respect to the occurrence of "demand" as contemplated by the Guaranties. Appellants suggest that the date of demand was the date the Trust filed its claim for basic interest with the bankruptcy court and, according to the appellants, "served the claim on each [Appellant]."

We agree with the district court that the term "demand" as contained in the Guaranties contemplates a demand for payment from the parties under the Guaranties. A demand on Exec Tech Partners under the A&M Agreement does not constitute a sufficient demand under the Guaranties. The district court did not err in concluding that no genuine issue of material fact exists with respect to the date of demand and further did not err in determining that December 31, 1994, was the date basic interest ceased to accrue.

IV.

The appellants asserted ten counterclaims against the Trust which were dismissed by the district court for lack of subject matter jurisdiction based upon the appellants' failure to file an administrative claim with the RTC prior to the July 1, 1991 claims bar date as required by 12 U.S.C. § 1821(d)(6). FIRREA requires compliance with an administrative claims procedure as a precondition to civil litigation, see 12 U.S.C. § 1821(d)(3)-(13), and a prospective claimant's failure to exhaust its administrative remedies under § 1821(d) deprives a court of subject matter jurisdiction. Bueford v. RTC, 991 F.2d 481, 484 (8th Cir. 1993); Tri-State Hotels, Inc. v. FDIC, 79 F.3d 707, 712 (8th Cir. 1996).

On appeal, the appellants contend the administrative review requirement does not apply here because the RTC failed to comply with the statute's requirement that the RTC publish three notices of the receivership, § 1821(d)(3)(B), and mail written notice of the claims bar date to all creditors on the institution's books, § 1821(d)(3)(C), and further, because many of the counterclaims are based on actions taken by the RTC after the bar date.

It appears from the record that the RTC published three notices of the receivership and claims bar date, but failed to provide notice to the appellants by mail. The appellants contend that, as institutional depositors at Home Savings, they were "creditors on the books" and were entitled to receive notice by mail. For the purposes of this analysis, we will assume without deciding that as depositors the appellants were

"creditors on the books" and were therefore entitled to mailed notice.

This court has held that "the RTC cannot, by its own conduct or otherwise, be estopped from raising the issue of subject matter jurisdiction." Bueford v. RTC, 991 F.2d at 485. More recently, we stated, "the FDIC's failure to provide proper notice 'does not relieve the claimant of the obligation to exhaust administrative remedies, because the statute does not provide for a waiver or exception under those circumstances.'" Tri-State Hotels, 79 F.3d at 716 (citation omitted). "The only exception to the strict requirement of exhaustion of remedies, [is] where the claimant does not receive notice of the appointment of the receiver in time to file his claim." Id. (citing 12 U.S.C. § 1821(d)(5)(C)). This exception will only apply to the appellants if they did "not receive notice of the fact of the appointment of a receiver. The exception does not apply to claimants who are aware of the appointment of a receiver but who do not receive notice of the filing deadline." Reierson v. RTC, 16 F.3d 889, 891-92 (8th Cir. 1994) (citation omitted).

Here, the record shows that the appellants were at least on inquiry notice of the receivership. A letter written by Myron Haith to Home Savings on April 5, 1991, indicates that Haith knew the RTC was "operating" Home Savings prior to the claims bar date. Even if we assume, as the appellants now assert, that they knew only of the RTC's "involvement" with Home Savings, but were unaware whether the RTC was acting as conservator or receiver, the appellants were sufficiently placed on inquiry notice as to require further inquiry into the details of the administrative process. See Elmco Properties, Inc. v. Second Nat'l Fed. Sav. Ass'n, 94 F.3d 914, 921-22 (4th Cir.

-10-

1996).[1]  Because the appellants had sufficient inquiry notice of the receivership, the failure to receive mailed notice does not avoid the jurisdictional bar of the statute.

The appellants next argue that the § 1821 jurisdictional bar does not apply because their counterclaims arose out of actions taken by the RTC after the claims bar date, and did not result from pre-receivership conduct of the failed institution.  A review of the case law demonstrates a split among the circuits regarding whether FIRREA's exhaustion requirement applies to post-bar date claims as well as pre-receivership claims.  One line of cases is represented by Homeland Stores, Inc. v. RTC, 17 F.3d 1269 (10th Cir.), cert. denied, 513 U.S. 928 (1994), where the Tenth Circuit held that the limitation on judicial review set forth in § 1821(d)(13)(D) does not apply to claims arising from management actions taken by the RTC.  Id. at 1274.  The court reasoned that because of the statutory time limits for the presentation of claims, the administrative review process was unavailable for post-receivership claims.  Id.  The court noted that if judicial review was unavailable, the plaintiff would have no forum in which to present its claims and that "[s]uch an outcome raises constitutional problems."  Id. at 1274 n.5.

The opposing line of cases is best represented by Heno v. FDIC, 20 F.3d 1204,

---

[1]Elmco is factually distinguishable where Elmco had knowledge that the RTC was the bank's conservator, leading it to reasonably conclude that this was its only capacity.  In contrast, the appellants knew only that the RTC was operating Home Savings and had no reason to assume that the RTC was not acting as receiver.

1208-10 (1st Cir. 1994) (Heno II),[2] where the First Circuit stated that the FDIC has implicitly interpreted § 1821(d)(5)(C)(ii), which permits claimants who did not receive notice of the receiver's appointment to file after the deadline, also to permit late filing by claimants whose claims did not arise until after the deadline. Id. at 1209. Therefore, the FDIC has interpreted § 1821(d)(13)(D) to require exhaustion of administrative remedies for both pre-receivership and post-bar date claims. Id. The court noted that the FDIC followed an "internal manual procedure" for reviewing post-receivership claims under FIRREA and that these procedures legitimately could accommodate these types of post-receivership administrative claims. Id. at 1208-09. See also Stamm v. Paul, 121 F.3d 635, 639-40 (11th Cir. 1997).

The Eighth Circuit has, as yet, to expressly rule on the question of whether FIRREA's administrative exhaustion requirements apply to post-receivership conduct by the RTC, and we refrain from making that decision at this stage in the present case. Although we discussed the issue in Tri-State Hotels, 79 F.3d at 713, we did not reach a decision on that issue based on our conclusion that "the genesis of [Tri-State's] claim is the prereceivership misconduct by the failed banks." Id. In a footnote, we stated that "courts should look to the underlying substance of the challenged events. If plaintiff brings an action against the assets of the failed institution, then FIRREA's

_____

[2]The Heno decision originally appeared at 996 F.2d 429 (1st Cir. 1993) (Heno I) where the First Circuit questioned whether FIRREA's administrative exhaustion requirement applied to post-receivership claims that arose beyond the claims bar date because such approach might preclude both administrative and judicial review. The First Circuit subsequently withdrew Heno I and superseded it with Heno II based upon its conclusion that the RTC's internal procedures legitimately could accommodate these types of post-receivership claims.

exhaustion requirement is applicable, regardless of how plaintiff styles its claim." Id. at 713 n.9.

Here, the district court granted the RTC's motion to dismiss the counterclaims based on its initial conclusion that the appellants failed to file administrative claims, but did not examine the underlying substance of the challenged events or the regulations of the RTC concerning review of post-bar date claims. Therefore, we remand this case to the district court for a determination of whether the counterclaims are based on pre-receivership conduct of the failed financial institution or whether they are based at least in part on post-receivership conduct of the RTC in the management of the financial institution's assets. If the court concludes that the claims arise under the second category, the district court must determine whether FIRREA, as interpreted by the RTC in its own internal manual procedures, requires or permits those claims to be first examined under the administrative review process. If the claims are pre-receivership claims or had their genesis in pre-receivership conduct, then the claims must be denied.

Accordingly, the district court order granting summary judgment in favor of the RTC on its claim under the Guaranties is affirmed as is the court's conclusion with respect to damages. The case is remanded to the district court on the issue of the viability of the counterclaims.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.