**MOTORCITY OF JACKSONVILLE, LTD.,** a limited partnership, by and through its general partner Motorcity of Jacksonville, Inc., a Florida corporation, David S. Hess, Plaintiffs–Appellants,

v.

**SOUTHEAST BANK N.A.,** David Feigenbaum, Defendants,

**Federal Deposit Insurance Corporation,** as receiver for Southeast Bank, N.A., Defendant–Appellee.

No. 93–4634.

United States Court of Appeals, Eleventh Circuit.

Aug. 20, 1997.

Before HATCHETT, Chief Judge, TJOFLAT, ANDERSON, EDMONDSON, COX, BIRCH, DUBINA, BLACK, CARNES and BARKETT, Circuit Judges, and KRAVITCH *, Senior Circuit Judge.

## ON REMAND FROM THE SUPREME COURT OF THE UNITED STATES.

ANDERSON, Circuit Judge:

## I. INTRODUCTION

In this case, appellants Motorcity of Jacksonville, Ltd. and David S. Hess (collectively "Motorcity") contend that the district court erroneously granted a motion to dismiss in favor of appellee Federal Deposit Insurance Corporation ("FDIC") based on the *D'Oench* doctrine.[1] *See D'Oench, Duhme & Co., Inc. v. FDIC,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942). A panel of this court vacated the district court's dismissal. *See Motorcity of Jacksonville, Ltd. v. Southeast Bank N.A.,* 39 F.3d 292 (11th Cir.1994).[2] On rehearing en banc, this court affirmed the district court's dismissal, holding that neither the Federal Deposit Insurance Act of 1950, Pub.L. No. 797, 64 Stat. 873, nor the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), Pub.L. No. 101–73, 103 Stat. 183, displaced the federal common law *D'Oench* doctrine. *See Motorcity of Jacksonville, Ltd. v. Southeast Bank N.A.,* 83 F.3d 1317, 1327–34 (11th Cir.1996) (en banc).[3] At the time of our en banc decision, the D.C. Circuit and the Eighth Circuit had held that FIRREA displaced the *D'Oench* doctrine. *See Murphy v. FDIC,* 61 F.3d 34, 40 (D.C.Cir.1995) (holding that FIRREA supplanted the *D'Oench* doctrine); *DiVall Insured Income Fund Ltd. Partnership v. Boatmen's First Nat'l Bank,* 69 F.3d 1398,

Dyanne E. Feinberg, Miami, FL, Kipp A. Coddington, Christopher D. Cerf, Daniel E. Troy, Stephen Goldman, Washington, DC, for Plaintiffs–Appellants.

Julie Feigeles, Miami, FL, S. Alyssa Roberts, James Scott Watson, Washington, DC, for Defendant–Appellee.

---

* Senior U.S. Circuit Judge Phyllis A. Kravitch participated in both the initial panel decision and the prior en banc decision in this case while she was in regular active service. She took senior status effective January 1, 1997, and has elected to participate in this decision pursuant to 28 U.S.C. § 46(c).

1. For a recitation of the facts underlying this case, see *Motorcity of Jacksonville, Ltd. v. Southeast Bank N.A.,* 83 F.3d 1317, 1321–22 (11th Cir.1996) (en banc).

2. The panel decision was based on the free standing tort exception to the *D'Oench* doctrine and did not address the preemption issue discussed in our en banc decision.

3. We also reaffirmed that the *D'Oench* doctrine is not limited by a specific asset requirement, held that the free standing tort exception to the *D'Oench* doctrine does not apply to this case, and held that Motorcity does not have a viable state law claim. *Id.* at 1336, 1338, 1345.

**1142**

1402 (8th Cir.1995) (following the D.C. Circuit's holding in *Murphy* that FIRREA supplanted the *D'Oench* doctrine). Since the time of our decision, the Fourth Circuit has held that FIRREA does not displace the *D'Oench* doctrine. *See Young v. FDIC*, 103 F.3d 1180, 1187 (4th Cir.1997) (following the holding in our en banc *Motorcity* decision that FIRREA does not abrogate the *D'Oench* doctrine). There is thus a split in the circuits on this issue. *See FDIC v. Houde*, 90 F.3d 600, 605 n. 5 (1st Cir.1996) (noting the split in the circuits).

The Supreme Court granted certiorari in this case, vacated our judgment, and remanded this case for further consideration in light of *Atherton v. FDIC*, —— U.S. ——, 117 S.Ct. 666, 136 L.Ed.2d 656 (1997). *Hess v. FDIC*, —— U.S. ——, 117 S.Ct. 760, 136 L.Ed.2d 708 (1997).

## II. DISCUSSION

In *Atherton*, the Resolution Trust Corporation ("RTC") sued officers and directors of a federal savings association ("bank"), which had gone into receivership with the RTC as receiver. *Atherton*, —— U.S. at ——, 117 S.Ct. at 669. The RTC claimed that the bank's officers and directors had violated the legal standard of care which they owed to the bank. *Id.* The issue in *Atherton* was whether courts should look to state law, to federal common law, or to 12 U.S.C. § 1821(k), a provision of FIRREA, to determine what the standard of care is for federal bank officers and directors. *Id.* The Court held that state law determines the standard of care so long as the state standard is stricter than the gross negligence standard set forth in § 1821(k). *Id.* at ——, 117 S.Ct. at 674. The Court explained that § 1821(k) sets a gross negligence floor which applies if the state standard of care is less strict. *Id.*

In reaching this conclusion, the Court first set § 1821(k) "to the side" and asked "whether, were there no such statute, federal common law would provide the applicable legal standard." *Id.* at ————, 117 S.Ct. at 669–70. The Court recognized that it had articulated in *Briggs v. Spaulding*, 141 U.S. 132, 11 S.Ct. 924, 35 L.Ed. 662 (1891), a federal common law corporate governance

standard. *Atherton*, —— U.S. at ——, 117 S.Ct. at 670. However, the Court noted that *Briggs* was decided long before *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), held that there is no federal general common law. *Atherton*, —— U.S. at ——, 117 S.Ct. at 670. The Court then addressed the issue of whether *Briggs* survived *Erie*, and held that it did not. *Id.* After so holding, the Court examined whether the matter of corporate governance standards for federally chartered banks was one of the few and restricted areas in which judicial creation of federal common law was justified. *Id.* Applying post-*Erie* jurisprudence, the Court characterized the issue as being whether the use of state law would constitute a significant conflict with some federal policy or interest such that the creation of a federal common law rule would be appropriate. *Id.* The Court examined several asserted federal interests and concluded that the use of state law would not significantly conflict with or pose a threat to any of these interests. *Id.* at ——, 117 S.Ct. at 673. The Court explained that "[t]he federal need [in this case] is far weaker than was present in what the Court has called the 'few and restricted instances' ... in which this Court has created a federal common law." *Id.* (quoting *Milwaukee v. Illinois*, 451 U.S. 304, 313, 101 S.Ct. 1784, 1790, 68 L.Ed.2d 114 (1981)).

The Court thus overruled *Briggs*, declined to create a new federal common law rule, and concluded that "[t]here is no federal common law that would create a general standard of care applicable to this case." *Id.* at ——, 117 S.Ct. at 674. Having concluded that there was no applicable federal common law, the Court then embarked on its only preemption analysis. The Court analyzed whether § 1821(k) set the sole standard of care for federal bank officers and directors, thus preempting state law, or whether it merely set a floor guaranteeing at least a gross negligence standard. Relying on the statute's purpose and legislative history and on the savings clause of § 1821(k), which states that "[n]othing in this paragraph shall impair or affect any right of the Corporation under other applicable law," the Court held that the

statute merely sets a gross negligence floor and that stricter state standards are not preempted. *Id.* at ——–——, 117 S.Ct. at 674–76.

As the above discussion indicates, *Atherton* does not address the question of whether a federal statute abrogates a previously established and long-standing federal common law doctrine. It is true that the *Atherton* facts implicated the preexisting federal common law rule announced in *Briggs.* However, rather than addressing whether § 1821(k) displaced the *Briggs* rule, the Court explicitly set § 1821(k) to the side and addressed the different issue of whether *Briggs* survived *Erie.* After concluding that *Briggs* did not survive, thus leaving no federal common law regarding the standard of care, the Court obviously never reached or addressed any issue of statutory abrogation of federal common law.[4] Thus, in *Atherton,* as in *O'Melveny & Myers v. FDIC,* 512 U.S. 79, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994), the Court's analysis focused on determining whether to *create* federal common law.

By contrast, the federal common law rule at issue in this case, the *D'Oench* doctrine, was first articulated by the Supreme Court in 1942, after *Erie.* The issue in this case therefore is not whether the *D'Oench* doctrine survived *Erie,* but rather whether Congress intended FIRREA to supplant the previously established and long-standing federal common law *D'Oench* doctrine. As explained in our previous en banc opinion, *United States v. Texas,* 507 U.S. 529, 113 S.Ct. 1631, 123 L.Ed.2d 245 (1993), applies in this context and provides a presumption in favor of retaining existing federal common law unless a statutory purpose to the contrary is evident. *See id.* at 534, 113 S.Ct. at 1634; *Motorcity,* 83 F.3d at 1330–34.

In order to transform this case into one for which the analysis of *Atherton* and *O'Melveny* is appropriate, this court would be required to overrule the Supreme Court's decision in *D'Oench,* which we cannot do. "Federal district courts and circuit courts are

bound to adhere to the controlling decisions of the Supreme Court." *Jaffree v. Wallace,* 705 F.2d 1526, 1532 (11th Cir.1983), *aff'd,* 472 U.S. 38, 105 S.Ct. 2479, 86 L.Ed.2d 29 (1985). The courts of appeals must follow Supreme Court precedent that has "direct application" in a case, even if it appears that the reasoning of the Supreme Court precedent has been rejected in other cases. *Rodriguez De Quijas v. Shearson/American Express, Inc.,* 490 U.S. 477, 484, 109 S.Ct. 1917, 1921, 104 L.Ed.2d 526 (1989). *See also Florida League of Prof'l Lobbyists, Inc. v. Meggs,* 87 F.3d 457, 462 (11th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 516, 136 L.Ed.2d 405 (1996). Only the Supreme Court has "the prerogative of overruling its own decisions." *Rodriguez De Quijas,* 490 U.S. at 484, 109 S.Ct. at 1922.

Moreover, we detect no indications that *D'Oench* is ripe for overruling. It is true that in its post-*Erie* jurisprudence, the Supreme Court has explained that the creation of federal common law is appropriate only in the " 'few and restricted' " instances where the use of state law would pose a significant threat to or conflict with a federal policy or interest. *O'Melveny,* 512 U.S. at 87, 114 S.Ct. at 2055 (quoting *Wheeldin v. Wheeler,* 373 U.S. 647, 651, 83 S.Ct. 1441, 1445, 10 L.Ed.2d 605 (1963)). However, in *D'Oench,* the Court examined the Federal Reserve Act and identified a significant federal interest and policy which warranted the creation of a federal common law rule:

> Public policy requires that a person who, for the accommodation of the bank, executes an instrument which is in form a binding obligation, should be estopped from thereafter asserting that simultaneously the parties agreed that the instrument should not be enforced.... Those principles are applicable here because of the federal policy evidenced in this Act to protect [the FDIC] ... from misrepresentations made to induce or influence the action of [the FDIC], including misstatements as to the genuineness or integrity of

---

4. Consistent with this approach, *Atherton* does not even cite *United States v. Texas,* 507 U.S. 529, 113 S.Ct. 1631, 123 L.Ed.2d 245 (1993), the most recent Supreme Court decision addressing whether Congress intended to abrogate a preexisting and long-standing federal common law doctrine.

securities in the portfolios of banks which it insures.... It would be sufficient in this type of case that the maker lent himself to a scheme or arrangement whereby the banking authority ... was or was likely to be misled.

*D'Oench*, 315 U.S. at 459–60, 62 S.Ct. at 680–81 (citations and internal quotations omitted).[5]

■■■■ For the foregoing reasons, we decline to accept Motorcity's invitation to overrule *D'Oench*. With the *D'Oench* doctrine safely in place as a long-standing federal common law rule, we conclude that the appropriate analysis for the statutory abrogation issue presented in this case is that articulated in *United States v. Texas*, and not that articulated in *Atherton* and *O'Melveny*. We continue to believe that the analysis set forth in our prior en banc opinion reflects the most reasonable reading of Congress's intent—i.e., that Congress did not intend FIRREA to displace the *D'Oench* doctrine, but rather intended to continue the harmonious, forty-year coexistence of the statute and the *D'Oench* doctrine.[6]

5. We reject Motorcity's attempt to limit *D'Oench* to its narrow facts—i.e., to cases involving a secret agreement related to a specific asset. Rather, we think it is clear from the *D'Oench* opinion that the Court applied a broader principle of law to the specific facts of that case. This reading is confirmed by the long-standing and well-established decisions of the several courts of appeals. Similarly, Motorcity's emphasis on the fact that it had paid off its loan before the FDIC took over Southeast Bank misconceives the federal policy of protecting the FDIC from misrepresentations. The bank examiners and the FDIC were misled from the moment Motorcity's written floor plan financing agreement appeared in the bank's records without the secret side agreement on which Motorcity seeks to rely.

6. Having resolved the issue for which this case was remanded by the Supreme Court, we address in this footnote the several other arguments asserted by the parties on remand. We reject Motorcity's argument that Congress intended the Federal Deposit Insurance Act of 1950 to abrogate the *D'Oench* doctrine. Motorcity points to no indication, and our review has disclosed no indication, in the 1950 Act or its legislative history that Congress intended the 1950 Act to displace the *D'Oench* doctrine. *See Motorcity*, 83 F.3d at 1332. *See also FDIC v. McClanahan*, 795 F.2d 512, 514 n. 1 (5th Cir.1986) ("The discussion of [§ 1823(e)] in the [1950 Act's] legislative history does not mention *D'Oench, Duhme*.").

Motorcity also contends that § 1821(d)(2)(H) indicates that Congress intended for FIRREA to displace the *D'Oench* doctrine. Section 1821(d)(2)(H) provides that "[t]he Corporation, as conservator or receiver, shall pay all valid obligations of the insured depository institution in accordance with the prescriptions and limitations of this chapter." 12 U.S.C. § 1821(d)(2)(H). Motorcity contends that this provision supplants the *D'Oench* doctrine because the *D'Oench* doctrine is not a "limitation[ ] of this chapter." We agree with the FDIC, however, that § 1821(d)(2)(H) does not indicate a congressional intent to displace the *D'Oench* doctrine. Instead, § 1821(d)(2)(H) assumes that the claims in question are valid and addresses only the manner in which valid claims are to be paid.

We think it is clear that the *United States v. Texas* test for statutory abrogation of federal common law has not been met. We are satisfied that it cannot be said that there is an "evident" statutory purpose to overcome the " 'presumption favoring the retention of long-established and familiar principles.' " *United States v. Texas*, 507 U.S. at 534, 113 S.Ct. at 1634 (quoting *Isbrandtsen Co. v. Johnson*, 343 U.S. 779, 783, 72 S.Ct. 1011, 1014, 96 L.Ed. 1294 (1952)).

Although not argued in its letter brief on remand, the FDIC has recently issued a Statement of Policy stating that 12 U.S.C. §§ 1821(d)(9)(A) and 1823(e)

> should be interpreted in a manner consistent with the policy concerns underlying the *D'Oench* doctrine. Accordingly, ... these sections bar claims that do not meet the enumerated recording requirements set forth in section 1823(e), regardless of whether a specific asset is involved, to the same extent as such claims would be barred by the *D'Oench* doctrine.

Statement of Policy Regarding Federal Common Law and Statutory Provisions Protecting FDIC, as Receiver or Corporate Liquidator, Against Unrecorded Agreements or Arrangements of a Depository Institution Prior to Receivership, 62 Fed.Reg. 5984, 5984 (1997). *But see Murphy v. FDIC*, 61 F.3d 34, 38 (D.C.Cir.1995); *Thigpen v. Sparks*, 983 F.2d 644, 649 (5th Cir.1993); *In re NBW Commercial Paper Litigation*, 826 F.Supp. 1448, 1464–65 (D.D.C.1992). Of course, if the FDIC's position is correct, and if § 1821(d)(9)(A) applies to this case, then the FDIC would prevail without our needing to reach the preemption issue.

Finally, the FDIC has argued for the first time on remand that FIRREA cannot apply to this case because the alleged arrangement at issue occurred prior to FIRREA's enactment. Motorcity argues that FIRREA can apply to this case because the FDIC became the receiver for Southeast Bank after FIRREA's enactment. Because we conclude that FIRREA did not displace the *D'Oench* doctrine, and because we conclude that Motorcity's claims are *D'Oench*-barred, we need not delve into an analysis of whether FIRREA's application to this case would pose a retroactivi-

## III. CONCLUSION

Having carefully reconsidered our decision in light of *Atherton*, we REINSTATE our prior en banc opinion published at 83 F.3d 1317, and we REINSTATE our judgment AFFIRMING the district court's judgment granting the FDIC's motion to dismiss.

ty problem. *Cf. O'Melveny*, 512 U.S. at 85–89, 114 S.Ct. at 2054–55 (declining to resolve the retroactivity question).