John MONTECINO d/b/a Tastee Restaurant, Truckstop of Louisiana, Inc., et al.

v.

State of LOUISIANA, et al.

No. Civ.A. 99–1925.

United States District Court, E.D. Louisiana.

June 28, 1999.

Ewell E. Eagan, Jr., A. Gregory Grimsal, Jon Nicholas Graydon, Gordon, Arata, McCollam, Duplantis & Eagan LLP, New Orleans, LA, Robert Stephen Rooth, Corinne Ann Morrison, Charles P. Blanchard, Chaffe, McCall, Phillips, Toler, & Sarpy, LLP, New Orleans, LA, Frank E. Massengale, Matthew Kepner Brown, Karen Kaler Whitfield, Locke Liddell & Sapp, LLP, Pan American Life Center, New Orleans, LA, Charles J. Romano, Charles J. Romano, Metairie, LA, Donald O. Cotton, Donald O. Cotton, Baton Rouge, LA, Thomas C. Goldstein, Boies & Schiller, LLP, Washington, DC, for plaintiffs.

David Glen Sanders, Louisiana Department of Justice, Civil Division, Baton Rouge, LA, Angie Rogers LaPlace, Louisiana Department of Justice, Baton Rouge, LA, for defendants.

## ORDER AND REASONS

FELDMAN, District Judge.

Before the Court are the plaintiffs' Motion for Preliminary Injunction and the defendants' Motion to Dismiss. For the reasons that follow, the Motion to Dismiss is GRANTED. The Motion for Preliminary Injunction is, therefore, DENIED.

### Background

The plaintiffs in this case, operators of video poker machines, ask this Court to stop the State of Louisiana from implementing the results of the November 5, 1996 Local Option Election by terminating the operation of video poker in 33 Louisi-

ana parishes; parishes that voted "No" to video poker in the November referendum.

A Louisiana statute, La.Rev.Stat. 27:13(C)(6), and the Gaming Control Board Emergency Rule 107 restricted campaign contributions by licensees of the Louisiana Gaming Control Board to candidates and committees. The statute was declared partly unconstitutional under the First Amendment by the Louisiana Supreme Court on October 15, 1996. Enforcement of the state statute and the emergency rule was enjoined. The Supreme Court's ruling came 17 days before the referendum election, in which Louisiana voters were asked to vote on whether to permit the operation of video poker devices. Instead of seeking to stop the November election, video poker interests then coordinated their efforts and campaigned to win the election for video poker. Thirty-three Louisiana parishes voted "No" to the continued operation of video poker machines. As a result of that vote, at midnight on June 30, 1999, the Louisiana State Police will use a central computer system to disable the video poker machines in those 33 parishes, if this Court does not stop the State authorities.

Video poker interests aligned with the plaintiffs have sought once before to stop the State from turning off the machines. In *Premier Games, Inc. v. Louisiana*, 739 So.2d 852 (La.Ct.App.1999), Louisiana's First Circuit Court of Appeals, reversing the trial court, rejected a petition to nullify the adverse November election and held that the video poker interests in that case had waived their rights by participating in the referendum election. The Louisiana Supreme Court denied certiorari on June 14, 1999. And so, the plaintiffs in this case now seek the same remedy from this Court. They make three claims under 42 U.S.C. § 1983.

### Law and Application

#### I. Subject Matter Jurisdiction

This Court has subject matter jurisdiction.

■ A lawsuit must be dismissed if it appears that the Court does not possess subject matter jurisdiction. Fed.R.Civ.P. 12(b)(1), (h)(3). The plaintiffs, of course, have the burden of establishing subject matter jurisdiction. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). The Court may base its decision on "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; and (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Barrera–Montenegro v. U.S.*, 74 F.3d 657, 659 (5th Cir.1996) (citation omitted). If the allegation of jurisdiction is insufficient but jurisdiction may be inferred from facts pleaded in the complaint, however, the motion must be denied. *Richard v. Ross*, 1998 WL 915865, *1 (E.D.La.).

■ The defendants contend that this Court lacks subject matter jurisdiction under the Rooker–Feldman doctrine. That doctrine forbids review of state court judgments by federal district courts. *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416, 44 S.Ct. 149, 68 L.Ed. 362 (1923).

■ Rooker–Feldman does not apply here. It is apparent from the face of the pleadings that the plaintiffs before this Court were not parties to the state court litigation; the Rooker–Feldman doctrine has no application if the federal plaintiff was not a party to the state proceedings. *Johnson v. De Grandy*, 512 U.S. 997, 1006, 114 S.Ct. 2647, 129 L.Ed.2d 775 (1994); *E.B. v. Verniero*, 119 F.3d 1077, 1092 (3d Cir.1997); *U.S. v. Owens*, 54 F.3d 271, 274 (6th Cir.1995); *Leaf v. Supreme Court of Wisconsin*, 979 F.2d 589, 597–98 (7th Cir. 1992).

#### II. Dismissal for Failure to State a Claim

■ Federal Rule of Civil Procedure 12(b)(6), compels dismissal of a complaint

for failure to state a claim upon which relief can be granted. The complaint must be liberally construed in the plaintiff's favor, and all facts pleaded in the complaint must be taken as true. *See Campbell v. Wells Fargo Bank,* 781 F.2d 440, 442 (5th Cir.), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). This Court may not dismiss a complaint under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Lowrey v. Texas A & M University System,* 117 F.3d 242, 247 (5th Cir.1997), *quoting Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). To avoid dismissal for failure to state a claim, however, a plaintiff "must plead specific facts, not mere conclusory allegations." *Guidry v. Bank of LaPlace,* 954 F.2d 278, 281 (5th Cir.1992).

### A. *The First Amendment Violation*

██ The plaintiffs claim that the defendants have violated their First Amendment rights of free speech and free assembly. The defendants do not contest the point. And certainly this Court is bound by the Louisiana Supreme Court's decision that La.Rev.Stat. 27:13(C)(6) violates the First Amendment in prohibiting contributions to committees supporting or opposing ballot measures. *Brown v. State Through Dept. of Public Safety,* 680 So.2d 1179, 1183 (La.1996). The pronouncements of a state's highest court on state law must be accepted by federal courts. *West v. American Telephone & Telegraph Co.,* 311 U.S. 223, 236, 61 S.Ct. 179, 85 L.Ed. 139 (1940); *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). But even assuming that the plaintiffs' First Amendment rights were violated, such a violation does not automatically entitle them to prospective injunctive relief

now. That restriction on their First Amendment rights ended with their victory in the Louisiana Supreme Court's *Brown* decision. The plaintiffs maintain, however, that they are not seeking a remedy for past deprivation of their First Amendment rights. They raise the First Amendment issue only in relation to what they contend is an imminent and structural violation of their rights under the Fifth and Fourteenth Amendments. Those claims are addressed below.

### B. *Fifth Amendment Taking Clause and Fourteenth Amendment Procedural Due Process*

██ The plaintiffs contend that the defendants' actions to implement the results of the "tainted" Local Option Election by ceasing video poker operation in 33 parishes will constitute an unlawful taking without just compensation under the Fifth Amendment and a deprivation of property without due process in violation of the Fourteenth Amendment. The Fifth Amendment, made applicable to the states through the Fourteenth Amendment, *Chicago, B. & Q.R. Co. v. Chicago,* 166 U.S. 226, 239, 17 S.Ct. 581, 41 L.Ed. 979 (1897), provides that "private property" shall not "be taken for public use, without just compensation."[1] The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." The Court finds that the plaintiffs' asserted interest here does not qualify as a protected property interest under the Fifth Amendment Taking Clause or under the Due Process Clause of the Fourteenth Amendment.

#### 1.

██ The U.S. Supreme Court has cautioned that there is no "set formula for determining when justice and fairness re-

---

1. The State argues that the Taking Clause of the Fifth Amendment is inapplicable in the absence of a federal actor. This is plainly incorrect. The Taking Clause is applicable to the states through the Fourteenth Amendment. *Phillips v. Washington Legal Found.,* 524 U.S. 156, 118 S.Ct. 1925, 1930, 141 L.Ed.2d 174 (1998); *Bennis v. Michigan,* 516 U.S. 442, 116 S.Ct. 994, 1001, 134 L.Ed.2d 68 (1996); *Dolan v. City of Tigard,* 512 U.S. 374, 383, 384 n. 5, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994).

quire that economic injuries caused by public action be compensated by the government" under the Taking Clause. *Keystone Bituminous Coal Ass'n v. DeBenedictis,* 480 U.S. 470, 495, 107 S.Ct. 1232, 94 L.Ed.2d 472 (1987). Factors that inform whether a regulation is a taking for purposes of the Fifth Amendment are (1) the economic impact of the regulation complained of; (2) the extent to which the regulation interferes with distinct investment-backed expectations; and (3) the character of the government action. *Kaiser Aetna v. U.S.,* 444 U.S. 164, 175, 100 S.Ct. 383, 62 L.Ed.2d 332 (1979). It is settled, however, that the framework of state law governs "what is a property interest compensable under the Fifth Amendment." *U.S. v. 131.68 Acres of Land,* 695 F.2d 872, 875 (5th Cir.1983) (growing crops are property under Louisiana law); *see also Fee v. Herndon,* 900 F.2d 804, 810 (5th Cir.1990) ("State law ... defines 'property' worthy of compensation under the Fifth Amendment's taking clause"). The U.S. Supreme Court has emphasized that:

> Property interests ... are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.

*Ruckelshaus v. Monsanto Co.,* 467 U.S. 986, 1001, 104 S.Ct. 2862, 81 L.Ed.2d 815 (1984); *Webb's Fabulous Pharmacies, Inc. v. Beckwith,* 449 U.S. 155, 161, 101 S.Ct. 446, 66 L.Ed.2d 358 (1980); *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

In this instance, Louisiana law explicitly provides:

> Any license, casino operating contract, permit, approval, or thing obtained or issued pursuant to the provisions of [the Louisiana Gaming Control Law] or any other law relative to the jurisdiction of the board is expressly declared by the legislature to be a pure and absolute revocable privilege and not a right, property or otherwise, under the constitution of the United States or of the state of Louisiana. Further, the legislature declares that no recipient of any such license, casino operating contract, permit, any other thing, or affirmative board action or approval acquires any vested interest or right therein or thereunder.

La.Rev.Stat. 27:2(B). State law adds that "[a]ny license issued or renewed under the provisions of [the Video Draw Poker Devices Control Law] is not property or a protected interest under the constitutions of either the United States or the state of Louisiana." La.Rev.Stat. 27:301(D). The conduct sought to be enjoined here is functionally a revocation of video poker licenses in 33 Louisiana parishes. The plaintiffs' contention that they are being deprived of their businesses and livelihoods is off-target, and the Court is not persuaded by it. The central interest here is the interest plaintiffs have in conducting video poker operations. That has been declared by the state legislature not to constitute a property interest.

The plaintiffs invoke *U.S. v. Salvatore,* 110 F.3d 1131 (5th Cir.1997), as controlling. The *Salvatore* defendants appealed convictions arising from participation in a scheme to operate organized crime-controlled companies that circumvented the licensing requirements of Louisiana's Video Draw Poker Devices Control Law. Among the arguments questioned by the Fifth Circuit in affirming the convictions was the contention that, under Louisiana law, video poker licenses do not constitute "money or property" as is required to support a conviction under the federal mail fraud statute, 18 U.S.C. § 1341. But that case was focused on the extent of the State's interest, not the licensees.

The *Salvatore* case is not instructive here. The question addressed there by the Fifth Circuit was whether video poker licenses are " 'property' for purposes of the federal mail fraud statute." 110 F.3d

at 1142. The court noted that Congress had not chosen to define property solely by reference to state law in that statute. *Id.* Furthermore, the animating question in *Salvatore* was whether the State of Louisiana had a property interest, for purposes of the mail fraud statute, in the licenses. The court based its ruling on the fact that the statute

> does not speak to whether video poker licenses constitute a property interest of the State of Louisiana. Read as a whole, this subsection instead demonstrates that it was Louisiana's intent to circumscribe the property rights of the licensees, but not such rights of the State itself.

*Id.* The Fifth Circuit's reasoning in *Salvatore* supports this Court's conclusion that the plaintiffs (licensees) have no state-recognized property interest in video poker that is protected by the Taking Clause.

### 2.

▇▇▇▇ Likewise, this Court finds that the state-enforced cessation of video poker operations in some of Louisiana's parishes is not a deprivation of property in violation of the Due Process Clause of the Fourteenth Amendment. "[P]rocedural due process is a positivist notion, designed to protect property interests, existing not by force of the due process clause itself, but established by reference to some independent source, such as state law or contract." *Martin v. Memorial Hospital at Gulfport,* 130 F.3d 1143, 1147, *citing Roth, supra,* 408 U.S. at 577, 92 S.Ct. 2701. For one to have a protected property interest within the contours of the Fourteenth Amendment, one must have some legitimate claim of entitlement to it, and "the sufficiency of the claim of entitlement must be decided by reference to state law." *Blackburn v. Marshall,* 42 F.3d 925, 936 (5th Cir.1995), *quoting Bishop v. Wood,* 426 U.S. 341, 344, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); *see also Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 430–32, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982) ("The hallmark of

property . . . is an individual entitlement grounded in state law").

▇▇▇▇ It is true that a license, once issued, may create a property interest in the holder that is traditionally protected by due process notions. *Bell v. Burson,* 402 U.S. 535, 539, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971); *Dixon v. Love,* 431 U.S. 105, 112, 97 S.Ct. 1723, 52 L.Ed.2d 172 (1977). But, even assuming that the plaintiffs have a constitutionally protected interest in the continued operation of video poker devices, procedural due process does not limit the power of the electorate to change the law of entitlement to such a privilege. *See Atkins v. Parker,* 472 U.S. 115, 129–130, 105 S.Ct. 2520, 86 L.Ed.2d 81 (1985). The Court rejects the plaintiffs' claim that their due process was violated because the electoral process was constitutionally flawed at the outset. The restriction on their speech, on their campaign plans, was clearly vindicated and lifted before the election ever took place. The plaintiffs have not shown, beyond argument that is disabled by retrospect and speculation, that seventeen days was a constitutionally insufficient period to ensure a fair election, which plaintiffs generously equate with total election victory throughout the State. To speculate that more campaign days would have resulted in total victory is as useless as speculating that the November election would have been enjoined, if some plaintiffs had chosen to try to stop the election instead of campaigning to win it.

### C. *Voiding State Elections*

A word about our structure of government. Federal intervention in state elections is considered cautiously.

The Fifth Circuit has generally upheld the voiding of a state election only in cases involving either: "(1) egregious conduct striking at the very heart of the fairness of an election; (2) an improper refusal by a district court to enjoin an election prior to its occurrence; or (3) constitutionally suspect racially discriminatory practices and a

**554**

strong showing that the results of the election had possibly been affected." *Saxon v. Fielding*, 614 F.2d 78 (5th Cir.1980). No racially discriminatory conduct has been alleged here. *See, e.g., Toney v. White*, 488 F.2d 310, 315 (5th Cir.1973) (en banc); *Bell v. Southwell*, 376 F.2d 659, 660 (5th Cir.1967). Nor has this Court been asked to enjoin an election before the fact. *See, e.g., Hamer v. Campbell*, 358 F.2d 215 (5th Cir.1966). The question remains whether this is a case in which procedural due process has been offended through state activities which "seriously undermine the fundamental fairness of the electoral process." *Duncan v. Poythress*, 657 F.2d 691, 700 (5th Cir.1981).

The Fifth Circuit has recognized a section 1983 cause of action when "wilful conduct undermines the organic processes by which candidates are elected," *Gamza v. Aguirre*, 619 F.2d 449, 452 (5th Cir.1980), *quoting Hennings v. Grafton*, 523 F.2d 861, 864 (7th Cir.1975), and has identified factors that help to define whether particular conduct amounts to a constitutional deprivation. They include the nature of the injury alleged; whether it was inflicted intentionally; whether it is "part of a pattern that erodes the democratic process" or merely a "negligent failure properly to carry out the state ordained electoral process"; and "whether state officials have succumbed to temptations to control elections by violence and by corruption." *Gamza*, 619 F.2d at 453 (citation omitted).

This Court is unpersuaded that restrictions on campaign contributions, lifted before the Local Option Election was held (and campaigned against), worked such an injury on the fundamental fairness of the election as to form the basis of a due process violation. In fact, the plaintiffs thought they could win it and worked to win it. No free speech limitation existed at the time of the election. No impropriety in the electoral process itself is evident or even urged. *See, e.g., Duncan*, 657 F.2d 691 (refusal of state officials to call a statutorily required special election). The

alleged due process violation stems solely from a deprivation of First Amendment rights which was remedied by the Louisiana Supreme Court before the election took place.

Some plaintiffs could have sought to stop the election itself:

[T]he law imposes the duty on parties having grievances based on [unconstitutional] practices to bring the grievances forward for pre-election adjudication ... [F]ailure to require prompt pre-election action ... as a prerequisite to post-election relief may permit, if not encourage, parties who could raise a claim to lay by and gamble upon receiving a favorable decision of the electorate and then, upon losing, seek to undo the ballot results in a court action.

*Toney*, 488 F.2d at 314. *See also Soules v. Kauaians for Nukolii Campaign Comm.*, 849 F.2d 1176, 1182 (9th Cir.1988) (a party disappointed with the outcome of an election may not recover damages under section 1983 when, despite full knowledge of the alleged constitutional infirmity, the party failed to seek preelection equitable relief).

The plaintiffs' contention that the deliberate bypass defense is not applicable, is weak at best as to those plaintiffs who were covered by the invalid statute. To the extent plaintiffs base their claims on the financial losses they anticipate as a result of having lost the election in 33 parishes, this Court will not thwart the legitimate actions of the Louisiana electorate. To the extent they base them on the supposed constitutional impropriety of proceeding with an election seventeen days after nullification of the restrictive statute, that injury was imminent well before the election. *Compare Toney*, 488 F.2d at 315 (no deliberate bypass of preelection judicial relief where discriminatory procedures were unknown to plaintiffs prior to election), *with Tucker v. Burford*, 603 F.Supp. 276, 278 (N.D.Miss.1985) (heavy burden of showing deliberate bypass met where official census showed malapportioned dis-

tricts and plaintiffs had opportunity to seek relief before election).[2]

 In conclusion, this Court agrees that:

> The very nature of the federal union contemplates separate functions for the states. If every state election irregularity were considered a federal constitutional deprivation, federal courts would adjudicate every state election dispute... Section 1983 did not create a delictual action for the torts of state officials, and it did not authorize federal courts to be state election monitors.

*Gamza*, 619 F.2d at 453–54 (citations omitted). The constitutional insult caused by La.Rev.Stat. 27:13(C)(6) and Emergency Rule 107 was remedied at the state level by the Louisiana high court. Thus, the grievances aired to this Court are without constitutional prestige.

For the foregoing reasons, the defendants' Motion to Dismiss is GRANTED. The plaintiffs' Motion for Preliminary Injunction is, therefore, DENIED.

---

**2.** The Court observes that some plaintiffs (those who were not covered by the invalid statute when it was passed because they held no license) cannot be criticized for not trying to stop the referendum.